KREINCES & ROSENBERG, P.C.
Attorneys for Plaintiff
900 Merchants Concourse, Suite 305
Westbury, New York 11590
Telephone: (516) 227-6500
Facsimile: (516) 227-6594

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ESPOSITO BROTHERS INC. d/b/a J. ESPOSITO & SONS,

Plaintiff,

-against-

FRUIT IMPORTERS AMERICAS, INC., TRUISFRUIT S.A., EDWARD HICKEY and ALVARO FERNANDO NOBOA PONTON,

Defendants.

Case No.: ____________________

**COMPLAINT**

ESPOSITO BROTHERS INC. d/b/a J. ESPOSITO & SONS ("Esposito Brothers") by its attorneys, Kreinces & Rosenberg, P.C., for its complaint against FRUIT IMPORTERS AMERICAS, INC. ("Fruit Importers"), TRUISFRUIT S.A. ("Truisfruit"), EDWARD HICKEY ("Hickey") and ALVARO FERNANDO NOBOA PONTON ("Noboa"), respectfully allege:

**PRELIMINARY STATEMENT**

1. This complaint is for the recovery of damages incurred as a result of the breach of contract, by Fruit Importers, with Esposito Brothers for the sale of fresh green bananas in July 2013, followed by Fruit Importers' subsequent exit from the U.S. market, without prior warning, after forty (40) years of continuous regular business with it and its predecessor in interest, Pacific Fruit, Inc.,

("Pacific Fruit") a Delaware corporation with offices in Newark, New Jersey pursuant to contract with Esposito Brothers caused only by Fruit Importer's tortious and illegal conduct.

2. This complaint is also for the recovery of damages incurred as a result of the fraud and deceit of the defendants, Fruit Importers and Truisfruit, which corporate defendants are owned by Alvaro Fernando Noboa Ponton ("Naboa"), perpetrated upon the plaintiff, Esposito Brothers, in concealing from plaintiff, the fraudulent scheme and plan, as hereinafter described in which each of them entered into prior to the events complained of herein which critically affected the ability of the plaintiff to purchase bananas at the agreed upon price pursuant to the contract between the plaintiff and the defendant, Fruit Importers and sell the bananas to its customers at prices sufficient to sustain a viable gross profit.

3. This complaint further seeks recovery for damages incurred by the plaintiff, Esposito Brothers, resulting from the fraud and deceit of Noboa, who is the chief executive officer, owner and the conscious moving force of each of the defendants. Noboa controls each of the defendants, who are defendants in interest corporations, as "sham" and "alter ego" corporations.

4. This complaint further seeks recovery for damages incurred by plaintiff, Esposito Brothers, resulting from the fraudulent misrepresentations of Hickey, who is the President of Fruit Importers.

## PARTIES

5. Plaintiff, Esposito Brothers, is a family owned corporation with its principal place of business located at 28 Williams Street, Lynbrook, New York 11563 involved *inter alia*, in the purchase and sales of fresh bananas at wholesale.

6. Defendant, Fruit Importers, is an entity organized and existing pursuant to the laws

of the State of Delaware with offices and a principal place of business at 60 Park Place, 14th Floor, Newark, New Jersey and is part of ~~a vertical integrated fruit business~~ **an enterprise** controlled by defendant, Noboa.

7. Defendant, Truisfruit, is an entity organized and existing pursuant to the laws of a foreign country, Ecuador, with offices and a principal place of business located at El Oro 101 Interseccion Vivero-5 de Junio, Guyaquil, Ecuador and/or at 60 Park Place, 14th Floor, Newark, New Jersey and is part of an enterprise controlled by the defendant, Noboa.

8. Defendant, Noboa is a natural person with offices and/or residence at 60 Park Place, 14th Floor, Newark, New Jersey. Noboa controls the defendant corporations, and others, as "sham" and "alter ego companies". He has stated in the website in his name that he has, through the acquisition of the control of his father's businesses, taken "control of the world's fourth largest banana business".

9. Defendant, Hickey, is a natural person who at all times herein, maintains his principal residence at 11 Bryna Drive, Lincroft, New Jersey.

## JURISDICTION

9. This Court's jurisdiction over this action is based upon 28 U.S.C. 1332 (Diversity Jurisdiction) in that it involves a dispute between a non-domiciliary of the State of New York and a domiciliary of the State of New York and the amount claimed is in excess of $75,000.00.

## VENUE

10. Venue is placed in the Eastern District of New York because the substantial events giving rise to the causes sued upon occurred in this District.

## STATEMENT OF FACTS

### Background

11. From April 1, 2011 until July 15, 2013, the defendant, Fruit Importers conducted all of the business previously performed by Pacific Fruit, to wit: the exclusive right to market and distribute Noboa's "Bonita" brand bananas throughout North America.

12. On or about April 1, 2011, Pacific Fruit transferred its business, doing $60 million annually in sales, to the Plaintiff, Fruit Importers.

13. No consideration was paid to Pacific Fruit for the transfer of its business to the defendant, Fruit Importers.

14. Upon information and belief, the direction to close the business of Pacific Fruit and transfer it to Fruit Importers was made due to actions in the United States District Court for the Southern District of New York under Case No. 10CIV03867, and Case No. 12CIV5754 wherein the Court confirmed an arbitration award and entered a judgment ("judgment") in the amount of $8,787,157.00 in favor of NYKCool against Pacific Fruit as well as a plenary action commenced by NYKCool against Pacific Fruit, Fruit Importers and Truisfruit ("NYKCool Actions").

15. NYKCool was a freight carrier who was party to a contract of affreightment with Pacific Fruit.

16. Thereafter, a Writ of Execution was issued to Pacific Fruit based upon the judgment.

17. The confirmation of the award was affirmed by the United States Court of Appeals for the Second Circuit on January 16, 2013.

18. The trademark "Bonita" was always registered and held by Pacific Fruit.

19. There was no assignment of the trademark from Pacific Fruit to Fruit Importers.

20. Each of the defendants knowingly engaged in an ongoing fraudulent scheme ("fraudulent scheme") to render the corporate defendants judgment proof and to secrete their assets and property through the wrongful transfer of such assets from one to each other.

21. The fraudulent scheme included, but was not limited to, transferring assets, for no consideration to various corporations all for the purpose of avoiding enforcement and payment of the judgment.

22. The defendant corporations used each other as conduits to pay each others' debts and obligations.

23. The defendant corporations are shell corporations formed and operated for an improper purpose.

24. The defendant corporations are alter egos, because the corporate form of each is dominated and disregarded to the extent that they actually carrying on the business and operations of one another, as if they were their own.

25. The defendant, Truisfruit, is a successor in liability, to Fruit Importers, who was in turn, a successor in liability to Pacific Fruit.

26. Esposito Brothers, a small New York based family business, had a business relationship in place for forty years whereby Pacific Fruit would provide Esposito Brothers with fresh green Bonita brand bananas.

27. Esposito Brothers, formerly operated by their father, is now operated by brothers Anthony, Jerry and Vincent Esposito.

28. Their father, as Esposito Brothers, also purchased Bonita bananas from Pacific.

29. The Noboa family group of 110 companies is currently the largest corporate

conglomerate in Ecuador. Noboa is the principal of the conglomerate and one of Latin America's richest men. Previously, the conglomerate was run by Noboa's father, who controlled the business when Esposito Brothers's grandfather began buying bananas from Noboa companies, forty years ago.

30. Pacific Fruit was the sole marketer of Bonita brand bananas in the United States and sold Bonita brand bananas to distributors, like Esposito Brothers.

31. The export of Bonita bananas was accomplished through Pacific Fruit as the brand's sole importer to the United States and then through Fruit Importers, as Pacific Fruit's successor.

32. Unbeknownst to Esposito Brothers at the time of the change from Pacific Fruit to Fruit Importers, was that Pacific Fruit had shut down its operation and orchestrated a complete transfer to Fruit Importers in order to avoid enforcement and payment of the judgment.

33. Fruit Importers is a Noboa-controlled company (now dormant) created to replace Pacific Fruit (also now dormant) as the entity responsible for importing and distributing Bonita bananas in the United States.

34. Bonita Bananas is a trademark of Pacific Fruit, Inc. which covers raw bananas. The trademark was filed in December 19, 1994 and now has cancelled status.

35. Pursuant to their agreement, Esposito Brothers placed its orders for Bonita bananas with Fruit Importers over the phone, approximately one week prior to the designated shipping date based on the updated price quotes from Fruit Importers for the next week. The agreement was regularly memorialized later in the form of invoices on delivery ("agreement").

36. The parties did business this way every week for approximately forty (40) years.

37. Esposito Brothers relied on this agreement for its supply of bananas.

38. The aforesaid agreement was in effect in July 2013.

39. Fruit Importers' breach of its agreement with Esposito Brothers was solely due to Fruit Importers' fraudulent conduct to avoid the enforcement and payment of the judgment.

**Fruit Importers' Breach**

40. On or about July 15, 2013, after forty (40) years of an established course of dealing Fruit Importers breached its agreement with Esposito Brothers, by failing to deliver goods as previously agreed between the Parties, and further by its subsequent exit from the U.S. banana market all without prior warning.

41. Esposito Brothers made its best efforts to cover for the missed shipment by contacting other suppliers seeking to buy any extra bananas they might have to sell.

42. Due to the lack of any warning or notice, Esposito Brothers was not able to cover entirely the missed shipments and when it could cover those missed shipments, it was only by purchasing non- name brand bananas at an inflated price.

43. These non-name-brand bananas could not command the same premium retail price as the Bonita brand banana that Esposito Brothers's customers had ordered.

44. As a result, Esposito Brothers had to pay more for bananas which it then was forced to sell at a lower price, significantly reducing profits and increasing costs and consequently jeopardizing the Esposito Brothers company, almost forcing Esposito Brothers out of business.

45. Esposito Brothers relied on Fruit Importers for approximately ninety percent of its inventory of bananas at the time.

46. Esposito Brothers, as the result of Fruit Importers' breach and subsequent termination of their contract without prior notice by exiting the U.S. market, had to work tirelessly to establish relationships with other banana vendors and market different bananas to its own long-term customers, suffering financial losses while struggling to get the business back on its feet.

47. Fruit Importers' failure to deliver the prearranged and expected shipment of bananas, pursuant to the agreement without notice, in July 2013 caused Esposito Brothers to sustain financial losses and damages which were compounded by Fruit Importers' sudden and immediate exit from the United States banana market, terminating the relationship without prior written notice after forty (40) years of consistent weekly supply to Esposito Brothers.

48. At the time Fruit Importers' failed to deliver, Esposito Brothers was expecting approximately 21,000 boxes of bananas to fulfill its orders to its customers.

**Fruit Importers' Judgment Avoidance Scheme Resulted in Fruit Importers' Breach of its Contract with Esposito Brothers**

49. The cause of the breach, in July 2013, by Fruit Importers was its participation in a fraudulent scheme to avoid payment of the judgment.

50. Fruit Importers participation in the fraudulent scheme, caused it to breach its agreement with Esposito Brothers by failing to deliver bananas to Esposito Brothers.

51. Fruit Importers implementation of the fraudulent scheme, in deciding not to deliver bananas to Esposito Brothers, caused damages to Esposito Brothers.

52. Fruit Importers' decision to conceal its participation in the fraudulent scheme and to conceal its intention to cease shipping bananas to Esposito Brothers, caused Esposito Brothers damage.

**Esposito Brothers' Damages Likely Offset and Outweigh Any Monies Allegedly Owed to Fruit Importers by Esposito Brothers**

53. The Complaint filed by Fruit Importers and Truisfruit against Esposito Brothers pending before Judge Roanne L. Mann under Case No. 15-cv-02229 in the United States District Court for the Eastern District of New York ("EDNY Action") requests alleged monies owed to Fruit

Importers and Truisfruit by Esposito Brothers for goods delivered prior to Fruit Importers' breach.

54. Esposito Brothers brings this action to recover damages caused by Fruit Importers' breach in July 2013 and thereafter and its subsequent termination without prior notice. The damages incurred by Esposito Brothers likely surpass any amount alleged to be owed by Esposito Brothers to Fruit Importers and Truisfruit in that action.

55. Esposito Brothers brings this action to recover damages from Truisfruit since it is an alter ego of Fruit Importers.

56. Esposito Brothers brings this action against Truisfruit based upon Truisfruit's participation in the fraudulent scheme.

57. Esposito Brothers brings this action against Noboa, as Noboa controlled and was the conscious moving force and orchestrator of the fraudulent scheme.

58. Esposito Brothers brings this action against Hickey, the President of Fruit Importers, who at all times participated in and effectuated the fraudulent scheme. Furthermore, Hickey, concealed the fraudulent scheme and made several misrepresentations for the purposes of inducing Esposito Brothers to continue to purchase bananas from Fruit Importers.

**FIRST COUNT**
**Breach of Contract against Fruit Importers**

59. Esposito Brothers repeat and re-allege all allegations previously set forth in paragraphs "1" to "58" above as if fully set forth herein.

60. Fruit Importers breached the terms of its agreement with Esposito Brothers, due to its implementation of the fraudulent scheme, when it suddenly failed to deliver goods to Esposito Brothers without notice and subsequently terminated its contract without prior notice by exiting the U.S. banana market entirely.

61. When Esposito Brothers first learned that its expected shipments would not arrive in New York, it had to struggle to find bananas from alternate suppliers on without any notice.

62. At the time of Fruit Importers' breach, Esposito Brothers has orders in excess of twenty-one thousand (21,000) boxes of bananas to fulfill.

63. Esposito Brothers was not able to fully cover the amount of missed shipments and when it could, Esposito Brothers had to cover by paying a higher price for non-name brand bananas that it then had to sell to its customers at a lower price, significantly reducing profit, and increasing costs, and also jeopardizing the financial position of the entire Esposito Brothers company.

64. Following the losses incurred as a result of Fruit Importers' breach during the week of July 15, 2013, the damages suffered by Esposito Brothers were compounded by Fruit Importer's sudden refusal to supply bananas in the United States market.

65. As a result of Fruit Importers' failure to provide any notice prior to its termination of its contract with Esposito Brothers, Esposito Brothers did not have any time to prepare for the loss.

66. Esposito Brothers was immediately forced to try to cover the missed shipments for the week of July 15, 2013 and was under severe financial pressure due to the missed shipments.

67. Fruit Importers left the market completely, without prior notice, putting Esposito Brothers in an even more desperate situation, in which, Esposito Brothers had to begin the process of forging new relationships with suppliers and marketing different bananas to its customers who expected Bonita brand bananas, causing further losses to Esposito Brothers.

68. As a result of Fruit Importers' failure to perform due to its participation in the fraudulent scheme, without prior notice, Esposito Brothers incurred damages.

69. As a direct and proximate result of Fruit Importers' breach of contract Esposito Brothers has suffered damages in excess of the jurisdictional requirements of 28 U.S.C. §1332(a) together with the costs and disbursements incurred in this action, plus pre-judgment interest.

## SECOND COUNT

## Breach of Covenant of Good Faith and Fair Dealing against Fruit Importers

70. Esposito Brothers repeat and reallege all allegations previously set forth in paragraphs "1" to "69" above as if fully set forth herein.

71. Fruit Importers breached the covenant of good faith and fair dealing with Esposito Brothers when it failed to deliver the expected shipment of goods during the week of July 15, 2014 and suddenly terminated the contract with Esposito Brothers by leaving the United States banana market without any notice or warning to Esposito Brothers, all in furtherance to its fraudulent scheme.

72. As a direct and proximate result of the foregoing, Esposito Brothers, has suffered damages in excess of the jurisdictional requirements of 28 U.S.C. §1332(a) together with the costs and disbursements incurred in this action, plus pre-judgment interest.

## THIRD COUNT

## Fraud and Deceit against All Defendants

73. Esposito Brothers repeat and reallege all allegations previously set forth in paragraphs "1" to "72" above as if fully set forth herein.

74. On or before April 1, 2011, Pacific Fruit was the sole importer of Bonita brand bananas from Ecuador to the United States.

75. After April 1, 2011, Fruit Importers was the sole importer of Bonita brand bananas from Ecuador to the United States.

76. Prior to July 15, 2013 the defendants were aware that the arbitration award in favor of NYKCool in the amount of $8,787,157.00 was confirmed and that judgment was entered ("judgment").

77. Prior to July 15, 2013, the defendants were aware of their fraudulent scheme to structure their affairs in order to avoid the enforcement and payment of the judgment.

78. Prior to July 15, 2013, the defendants participated and orchestrated a plan to avoid the judgment, which plan was fraudulent and pursuant to which plan would cause the defendants to cease delivering bananas to Esposito Brothers.

79. By reason of the fraudulent concealment of the foregoing facts, knowing that the plaintiff, Esposito Brothers, relied upon the defendant, Fruit Importers, to supply it with loads of bananas Esposito Brothers has been damaged.

80. The damages sustained by Esposito Brothers were compounded due to the sudden refusal to supply bananas to the plaintiff, Esposito Brothers.

81. The damages sustained by Esposito Brothers include, but are not limited to, having to make other arrangements to acquire a source of supply for bananas; having to sell non-name brand bananas at less competitive prices and at increased costs, thus decreasing their profit margin for several months succeeding July 15, 2013; for loss of business opportunity in that Esposito Brothers was not able to fulfill orders by customers, both existing and potential; and Esposito Brothers' inability to fulfill orders placed by its customers on and prior to the date defendants breached its contract.

82. Prior to July 15, 2013, and more particularly, April 1, 2011, defendants were aware, as a result of the decisions and orders rendered in the NYKCool actions, that, as a matter of law, and based upon the doctrine of *res judicata*, that each of them were found to be participants in the fraudulent scheme perpetrated by defendants pursuant to which scheme the defendants decided to cease shipping bananas to Esposito Brothers, and others, without regard to the effect upon Esposito Brothers.

83. Since the fraudulent scheme was never disclosed to the plaintiff, it continued placing its orders in substantial weekly amounts until defendants breach.

84. The defendants well knew that, pursuant to their scheme, they would cease supplying bananas but concealed this fact from Esposito Brothers.

85. The defendants continued their fraudulent concealment in order to induce the plaintiff to continue placing substantial weekly orders, knowing that they were going to cease supplying bananas at some point, without notice to Esposito Brothers, due to the judgment and their fraudulent scheme to avoid its enforcement and payment.

86. Unbeknownst to the plaintiff, the engagement by the defendants in a "shell game" and patterns resembling "whack-a-mole" continued from on or about April 1, 2011 through and including July 15, 2013, during which time the plaintiff continued to purchase substantial weekly quantities of Bonita brand bananas not knowing that eventually defendants would cease selling Bonita brand bananas to the plaintiff, without notice.

87. At no time during the period on or after April 1, 2011 to July 15, 2013 did the defendants inform the plaintiff as to what was occurring concerning the effort to collect the judgment against them nor their fraudulent scheme to avoid it, in order that the plaintiff could make preparations for the supply of bananas from another source.

88. On July 15, 2013 when the defendant, Fruit Importers, ceased supplying Bonita

brand bananas to Esposito Brothers, it knew for the prior two (2) years, that the defendant, Noboa, who exercised ~~sole~~ control over defendant, Fruit Importers, and other Noboa-controlled entities, was engaged in a fraudulent scheme to avoid payment of the judgment.

89. The defendants knew, or should have known, on or about April 1, 2011, that their fraudulent scheme would be discovered by their judgment creditor which would cause cessation of their ability to sell Bonita brand bananas to the plaintiff.

90. On July 15, 2013 the defendants well knew that the fraudulent scheme was not known to the plaintiff.

91. The defendants their its agents, servants and employees, well knew that the plaintiff was unaware of the existence of the fraudulent scheme, nevertheless the defendants refrained from disclosing its existence to the plaintiff.

92. In order to induce the plaintiff to continue doing business and placing orders with Fruit Importers, the defendants concealed the existence of the fraudulent scheme, which included the cessation of the importation of Bonita brand bananas and the assignment, *inter alia,* of the alleged account receivable of the plaintiff to the defendant, Truisfruit.

93. On or after April 1, 2011, the plaintiff received invoices from the defendant, Fruit Importers.

94. On or after April 1, 2011, Anthony Esposito, an officer of the corporate plaintiff spoke with Edward Hickey ("Hickey"), the Treasurer of Pacific Fruit to inquire as to the reason for the change of importer from Pacific Fruit to Fruit Importers.

95. Hickey informed Anthony Esposito that "it is the same company, nothing has changed and our agreement to supply you with Bonita brand bananas will continue".

96. At the time of the aforesaid representations, Hickey as President of the defendant,

Fruit Importers and Treasurer of Pacific Fruit, knew that Fruit Importers was an instrument of fraud as part of the fraudulent scheme perpetrated to prevent and delay the enforcement or payment of the judgment.

97. Hickey, as President of the defendant of Fruit Importers and Treasurer of Pacific Fruit knew that the plaintiff, Esposito Brothers, relied upon the supply of Bonita brand bananas on a weekly basis in order to service their large base of customers, and knew that Anthony Esposito would rely upon his representations.

98. Hickey as the Treasurer of Pacific Fruit and President of the defendant, Fruit Importers, knew that had he informed Anthony Esposito of the fraudulent scheme that would have affected the purchase of Bonita brand bananas by Esposito from Fruit Importers, in that the plaintiff would have considered the danger of the fraudulent scheme as it affected the plaintiff, Esposito Brothers, and would have sought a different supplier of bananas from various other suppliers of bananas, to wit: Dole, Chiquita and the like.

99. Hickey as President of Fruit Importers and Treasurer of Pacific Fruit made the foregoing representations in order to induce Esposito Brothers to continue its agreement with Pacific Fruit now in the form of Fruit Importers, in order that Esposito Brothers would continue to purchase Bonita brand bananas from Fruit Importers without interruption.

100. Hickey as President of Fruit Importers and Treasurer of Pacific Fruit, knew that the plaintiff, Esposito Brothers, relied upon these representations since the viability of its operation required it to sell Bonita brand bananas to its customers based upon the supply of Bonita brand bananas to it on a weekly basis pursuant to its agreement with Pacific Fruit and then Fruit Importers.

101. The corporate defendants, Fruit Importers and Truisfruit, waited over two (2) years prior to commencing the EDNY Action against the plaintiff because their fraudulent scheme was continuing.

102. The plaintiff relied upon the ability of defendants to continue to import Bonita bananas in order that they may satisfy the purchase orders of their customers for such bananas and the quantity on a weekly basis which was approximately twenty (20) containers of bananas each containing 1,080 lbs. of bananas.

103. The defendants knew that plaintiff was relying on these substantial weekly shipments of bananas as they had for decades prior thereto with their predecessor in interest, *viz.* Pacific Fruit and the father and grandfather of the current owners of the corporate plaintiff.

104. By reason of the purposeful fraudulent concealment and fraudulent representations, damages should be awarded against each of the defendants, jointly and severally, for participating in the fraudulent and illegal scheme and for their wrongful and illegal conduct, all without regard for the effect upon Esposito Brothers.

105. As a direct and proximate result of the foregoing, Esposito Brothers, has suffered damages in ~~the amount of $250,000.00,~~ **excess of the jurisdictional requirements of 28 U.S.C. §1332(a)** together with the costs and disbursements incurred in this action, plus pre-judgment interest.

**~~THIRD~~ FOURTH COUNT**

**Aiding and Abetting against Truisfruit**

106. Esposito Brothers repeat and reallege all allegations previously set forth in paragraphs "1" to "105" above as if fully set forth herein.

107. In addition to being a participant in the fraudulent scheme to avoid payment of the judgment, the defendant, Truisfruit, rendered substantial assistance to the co-defendants, Fruit

Importers and Noboa, in receiving an assignment ("assignment")of the accounts receivable (the "receivable") from Fruit Importers allegedly due from Esposito Brothers.

108. The substantial assistance consisted of the fact that Fruit Importers was not the real party in interest in the sale of Bonita brand bananas for the reason that Pacific Fruit was the holder of the trademark and had been the seller of Bonita brand bananas to Esposito Brothers for forty (40) years.

109. The defendant, Fruit Importers, was formed only to evade payment of the judgment against Pacific Fruit by placing the receivable beyond the reach of NYKCool, the judgment creditor.

110. In order to render the co-defendant, Fruit Importers, judgment-proof, the defendant, Truisfruit became a party to the "assignment".

111. The defendant, Truisfruit, had knowledge of the alleged breach of contract and fraudulent scheme of the defendants, Noboa, Pacific Fruit and Fruit Importers, and conducted itself to further the fraudulent scheme to avoid payment of the judgment by any of the Noboa entities, then being made parties defendant in the NYKCool Actions in the United States District Court for the Southern District of New York.

112. Although the assignment appeared on its face to be a legal document, it is in fact an illegal document, since Truisfruit was secretly colluding with the co-defendant, Fruit Importers, in perpetuating and furthering the fraudulent scheme to avoid payment of the judgment.

113. Truisfruit is a foreign corporation, not licensed under the Perishable Agricultural Commodities Act.

114. Truisfruit has been found to be doing business in the State of New York without a license or registration with the Secretary of State.

115. Truisfruit never informed Esposito Brothers of the fraudulent scheme of Noboa, Pacific Fruit and Fruit Importers and itself to avoid payment of the judgment. However, presented itself as a third party, innocent, assignee of the accounts receivable from the Fruit Importers.

116. Truisfruit had knowledge of the fraudulent scheme and its concealment alleged herein and as such aided in the illegal conduct of the co-defendant, Fruit Importers, in avoiding payment of the judgment.

117. As a direct and proximate result of the foregoing, Esposito Brothers, has suffered damages in excess of the jurisdictional requirements of 28 U.S.C. §1332(a) together with the costs and disbursements incurred in this action, plus pre-judgment interest.

**FOURTH COUNT**

**The Fraud of Noboa**

118. Esposito Brothers repeat and reallege all allegations previously set forth in paragraphs "1" to "117" above, as if fully set forth herein.

119. Noboa as the owner and conscious moving force directing the activities of the corporate defendants knowingly engaged in an ongoing fraudulent scheme to render the corporate defendants judgment-proof and to secrete their assets and property through the wrongful transfer of such assets.

120. The corporate defendants are shell corporations and do not constitute legal entities, and they are mere "alter egos" of each other, and Noboa. Noboa caused the corporate defendants to fail to observe corporate formalities, caused an overlapping in their ownership, officers, directors and personnel and failed to show proper business discretion.

121. Noboa is the conductor and the corporate defendants and Hickey are the orchestra in the orchestration of the fraudulent scheme as herein alleged which resulted in the perpetration of

fraud upon the plaintiff.

122. Each of the defendants being instruments of fraud created, participated in, perpetrated and carried out Noboa's instructions including the representations herein before alleged, to conceal from Esposito, the fraudulent scheme which was being conducted.

123. Noboa instructed each of the defendants to say or do anything to further their fraudulent scheme, without regard to the harm such conduct inflicted upon plaintiff, Esposito Brothers.

124. By reason of the foregoing, the plaintiff has been damaged in excess of the jurisdictional requirements of 28 U.S.C. §1332(a) together with the costs and disbursements incurred in this action plus pre-judgment interest.

## PRAYER FOR RELIEF

**WHEREFORE**, by reason of the foregoing, Esposito Brothers respectfully request judgment, as follows:

A. On the First Count against the defendant, Fruit Importers, compensatory damages for its breach of contract in a sum of not less than Two Hundred Fifty Thousand ($250,000.00) Dollars, together with pre-judgment interest and the costs and disbursements incurred in this action;

B. On the Second Count against the defendant, Fruit Importers, compensatory damages in a sum of not less than Two Hundred Fifty Thousand ($250,000.00) Dollars, together with pre-judgment interest and the costs and disbursements incurred in this action;

C. On the Third Count against all defendants, compensatory damages in a sum of not less than Five Hundred Thousand ($500,000.00) Dollars, together with pre-judgment interest and the costs and disbursements incurred in this action, as well

as an award of punitive damages in an amount to be determined, however, not less than Five Million ($5,000,000.00) Dollars for the defendants wilful, malicious and illegal conduct directed at the plaintiff as well as the general public, in order to punish the defendants for their wonton, and malicious acts in order to prevent similar acts;

D. On the Fourth Count against the defendant, Truisfruit, compensatory damages in an amount not less than Five Hundred Thousand ($500,000.00) Dollars, together with pre-judgment interest and the costs and disbursements incurred in this action as well as an award of punitive damages in an amount to be determined, however, not less than Five Million ($5,000,000.00) Dollars for this defendant's wilful, malicious and illegal conduct directed at the plaintiff as well as the general public, in order to punish this defendant for its wonton, and malicious acts in order to prevent similar acts; as well as an award of punitive damages in an amount to be determined, however, not less than Five Million ($5,000,000.00) Dollars for the defendant's wilful, malicious and illegal conduct directed at the plaintiff as well as the general public, in order to punish the defendants for their wonton, and malicious acts in order to prevent similar acts;

E. On the Fifth Count against the defendant, Noboa, compensatory damages in an amount not less than Five Hundred Thousand ($500,000.00) Dollars, together with pre-judgment interest and the costs and disbursements incurred in this action as well as an award of punitive damages in an amount to be determined, however, not less than Five Million ($5,000,000.00) Dollars for this defendant's wilful, malicious and illegal conduct directed at the plaintiff as well as the general public, in order to punish this defendant for his wonton, and malicious acts in order to

prevent similar acts; as well as an award of punitive damages in an amount to be determined, however, not less than Five Million ($5,000,000.00) Dollars for the defendant's wilful, malicious and illegal conduct directed at the plaintiff as well as the general public, in order to punish the defendant for his wonton, and malicious acts in order to prevent similar acts; and

F. An award of attorneys fees and cost of suit against all defendants; and

G. Such other and further, and/or different relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury for all issues so triable in this action.

Dated: Westbury, New York
July 19, 2016

Respectfully submitted,

KREINCES & ROSENBERG, P.C.

By: ______________________

LEONARD KREINCES, ESQ.
Attorneys for Plaintiff
900 Merchants Concourse, Suite 305
Westbury, New York 11590
leonard@kresq.com
Tel: 516-227-6500
Fax: 516-227-6584

Z:\kreinces1\WORK\General\esposito bros #16-15\vs. Fruit Importers\Complaint.07.18.16.wpd